Shauna Brennan, Esq.
Washington State Bar Number 36461
Brennan Legal Counsel Group, PLLC
1010 S. I Street
Tacoma, Washington 98405
(702) 306-8104
(702) 834-5340 fax
*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

* * *

| | |
|---|---|
| DIVERSIFIED TECHNOLOGY HOLDINGS INC, a Nevada corporation; | CASE NO. |
| PLAINTIFF, | |
| vs. | |
| MINERLOGIC, LLC, a Washington limited liability company; LOGIX LLC, a Washington limited liability company; DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive | **VERIFIED COMPLAINT** <br><br> Jury Demand? <br> ☐ Yes <br> X No |
| DEFENDANTS. | |

COMES NOW PLAINTIFF, DIVERSIFIED TECHNOLOGY HOLDINGS INC, a Nevada corporation, ("PLAINTIFF"), by and through its attorney of record, Shauna S. Brennan, Esq. of Brennan Legal Counsel Group, PLLC, and for its Verified Complaint alleges as follows:

///

///

///

///

1

## PARTIES

1. At all times PLAINTIFF, DIVERSIFIED TECHNOLOGY HOLDINGS INC., is a Nevada corporation, with data mining operations in Grant County, Washington.

2. At all times DEFENDANT LOGIX LLC ("Logix") is a Washington limited liability company, doing business in Grant County, Washington.

3. At all times DEFENDANT LOGIX LLC holds a contractor's license issued by Washington state.

4. At all times DEFENDANT MINERLOGIC, LLC ("Minerlogic") is a Washington limited liability company, doing business in Grant County, Washington.

5. PLAINTIFF specifically complains and alleges causes of action against the specific entity, or entities, that are responsible for the initiation, approval, support, or execution of the acts set forth in this Complaint. PLAINTIFF is not sure as to the capacity and identity of individuals personally responsible for the acts alleged herein, and as soon as the exact nature of the entity or entities are known, PLAINTIFF will amend its Complaint and will substitute the exact names of the proper individual DEFENDANTS in place of DEFENDANTS sued herein as DOES 1 through 10, inclusive.

6. PLAINTIFF specifically complains and alleges causes of action against the specific entity, or entities, that are responsible for the initiation, approval, support, or execution of the acts set forth in this Complaint. PLAINTIFF is not sure as to whether those entities are individuals, a partnership, a limited partnership, a corporation, or some other form of business entity, and as soon as the exact nature of the entity or entities are known, PLAINTIFF will amend its Complaint and will substitute the exact names of the

2

proper DEFENDANTS in place of DEFENDANTS sued herein as ROE CORPORATIONS 1 through 10, inclusive.

## BASIS FOR JURISDICTION- DIVERSITY OF CITIZENSHIP

7. Jurisdiction over a matter between individuals or corporate citizens of different states is also proper with this Court under 28 U.S.C. § 1332, as the Plaintiff is a corporate citizen of the state of Nevada, the Defendants are individuals or corporate citizens of Washington and the amount in controversy is over $75,000.00.

## VENUE

8. Venue of this action is established in this Court by 28 U.S.C. §§ 1391, as the DEFENDANTS, the real property and all of the complained about actions took place in Grant County, Washington in Quincy, George, Ephrata and Moses Lake.

## FACTS COMMON TO ALL CLAIMS

9. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 8 of this Complaint as though fully set forth herein.

10. At all relevant times PLAINTIFF operated data centers in Moses Lake, Grant County, Washington.

11. PLAINTIFF's operations required reliable power supply through transformers, real estate warehousing with excessive venting and cooling capability and regular maintenance and service of data equipment.

12. PLAINTIFF's clients include Lifestyle Galaxy, and the terms "Galaxy Mining" references PLAINTIFF's services undertaken for clients including Lifestyle Galaxy.

///

///

13. Prior to January 2018, PLAINTIFF operated leased space from Mega Big Power and its successor Giga Watt ("Giga Watt"), including a data center in Wenatchee, WA, and a data center in Moses, Lake, WA ("Big Box").

14. Prior to January 2018, PLAINTIFF's representatives met Kyle Sidles ("Sidles") a consultant, service technician, affiliate or employee of Mega Big Power and ultimately Sidles was the Chief Technology Officer of Giga Watt.

15. On or about March 2018, PLAINTIFF, having been advised that Giga Watt was implementing a higher pricing structure, began seeking replacement operating facilities.

16. Due to the necessity of large commercial power demands for PLAINTIFF'S operations, the high demand for specialty facilities with transformers and large power delivery and impending need to relocate operations from Giga Watt, PLAINTIFF commenced the due diligence and search of replacement facilities with adequate power to service 2.5 megawatts of power inclusive of current use and anticipated growth.

17. On or about May 2018, Sidles and Steve G. Steele ("Steele") travelled to Las Vegas, Nevada to meet with Randy Prince, PLAINTIFF'S Chief Financial Officer at which time Sidles and Steele advised PLAINTIFF that they owned and/or operated data maintenance warehousing and service company together with Patrick E. Mezo ("Mezo").

18. At all relevant times, Sidles, Mezo and Steele, held themselves out to be the proprietors and promoters of a data center and service businesses (Minerlogic and Logix referred to as "DEFENDANTS" and "Minerlogic/Logix") that owned/operated real property in Grant County, Washington, equipped with transformers capable of providing excessive power for data mining operations, and provided licensed electrical services and data and transmission equipment maintenance in Washington.

4

19. On or about April/May 2018, representatives and/or owners of Minerlogic/Logix represented to PLAINTIFF that they had space and power availability in their warehouse buildings in George, Washington, Quincy, Washington and Ephrata, Washington, sufficient to accommodate 2.3-2.6 megawatts of power and would offer computer and transmission equipment maintenance services for PLAINTIFF.

20. On or about April/May 2018, representatives and/or owners of Minerlogic/Logix represented to PLAINTIFF that the space in Quincy would be available immediately, while the space in George and Ephrata would not be available until after Giga Watt, the then occupying tenant, had vacated.

21. On or about May 1, 2018, PLAINTIFF purchased computer equipment from Minerlogic/Logix at 7499 Road L5 NW, Quincy, Washington ("Quincy Facility") and PLAINTIFF commenced operations on that site.

22. On or about May 31, 2018, Steele and Sidles proposed for Minerlogic/Logix to provide warehouse space, power and data maintenance services as their on-site provider, as set forth on the email from Steve Steele attached as **Exhibit A**.

23. On or about June 1, 2018, David Martin, Chief Technology Officer of PLAINTIFF, Randy Prince, Chief Financial Officer of PLAINTIFF and Sidles, Mezo and Steele, on behalf of DEFENDANTS, held a conference call and discussed the following transaction details: Minerlogic/Logix to provide warehouse space, power and data maintenance services as their on-site provider in George and Quincy (also referenced as Brown) with 1.3 Megawatt Power capacity for five years, and PLAINTIFF to pay rent and utilities, plus 300 BTC payment as an Opportunity Cost. The call details as recorded by David Martin are set forth on **Exhibit B**, attached hereto and incorporated herein.

5

24. The parties agreed to prepare documentation to reflect this transaction.

25. In good faith reliance on the contemplated transaction, on or about June 6, 2018, PLAINTIFF funded to Minerlogic/Logix the amount of 65 BTC to a wallet designated by Sidles for application toward the 300 BTC payment.

26. At all times relevant to this action, the valuation of BTC varied, however the parties agreed that the spot price to be applied was $10,000 US dollar, such that 300 BTC equaled Three Million Dollars ($3,000,000), as set forth in **Exhibit B.**

27. Sidles confirmed that the 65 BTC would be applied toward the 300 BTC payment and was refundable.

28. In good faith reliance on the contemplated transaction, on or about June 21, 2018, PLAINTIFF funded to Minerlogic/Logix the amount of 65 BTC to a wallet designated by Sidles for application toward the 300 BTC payment.

29. Something mid-2018, Sidles terminated his employment with Giga Watt.

30. On or about June 25, 2018, Minerlogic/Logix representatives sent to PLAINTIFF a draft lease form for the facility located at Lots 3,4,5,6 Block Two, First Addition to the Plat of George according to the Plat thereof recorded in Vol. 7 of Plats, page 73, records of Grant County, Washington ("George Facility").

31. DEFENDANTS represented that the George Facility warehouse had capacity to deliver up to 1.25 giga watt of power.

32. At PLAINTIFF's request, Minerlogic/Logix personnel conducted an inspection of PLAINTIFF's data center operations in Moses Lake sometime between July and August 2018 and prepared a spreadsheet on or about September 4, 2018, of the PLAINTIFF'S equipment and power requirements as reflected on **Exhibit C.**

6

33. On or about September 1, 2018, Logix delivered to PLAINTIFF a form Lease Agreement for the George Facility, however PLAINTIFF advised that it did not reflect the contemplated transaction and DEFENDANT stated that it would be revised.

34. On September 4, 2018, Sidles sent to PLAINTIFF invoicing and accounting for the Quincy Facility, which reflected the understanding of a Quincy Facility payment in the amount of $2,000 per month and maintenance in the amount of $1,000 per month. The invoice also reflected installation of a GPU build, which Minerlogic/Logix had completed. PLAINTIFF paid the amount of $237,676. The invoice also reflected the 300 Kilowatt availability, in the amount of $300,000. See **Exhibit D** attached hereto and incorporated herein by this reference.

35. On or about September 4, 2018, after inspection of the PLAINTIFF's Moses Lake operations, Minerlogic/Logix provided to PLAINTIFF an equipment breakdown of the Moses Lake equipment. See **Exhibit E** attached hereto and incorporated herein by this reference.

36. In good faith reliance on the contemplated transaction, on or about September 6, 2018, PLAINTIFF funded to Minerlogic/Logix the amount of 85 BTC to a wallet designated by Sidles for application toward the 300 BTC payment.

37. On or about September 15, 2018, PLAINTIFF delivered to Minerlogic/Logix computer equipment to be installed at the George Facility.

38. Minerlogic/Logix installed the computer equipment at the George Facility on or about September 15, 2018, and connected the power supply.

39. On September 20, 2018, Minerlogic/Logix delivered to PLAINTIFF a spreadsheet of their Mining Facilities maintained by Miner Logic, identifying the George Facility,

7

Quincy Facility and 2 buildings located at 258 A Street Ephrata, Washington ("Ephrata Facility"), a true and correct copy is attached hereto as **Exhibit F** and incorporated herein by this reference.

40. In good faith reliance on the contemplated transaction, on or about September 27, 2018, PLAINTIFF funded to Minerlogic/Logix the amount of 35 BTC to a wallet designated by Sidles for application toward the 300 BTC payment.

41. PLAINTIFF operated at the Quincy Facility from approximately May 1, 2018 to approximately May 26, 2020, due to DEFENDANTS failure to pay for utility services.

42. On or about October 2, 2018, Logix delivered to PLAINTIFF a form Lease Agreement Revised for the George Facility, adding a proposed form personal Guarantee, PLAINTIFF did not agree to provide a personal guaranty and rejected the lease form.

43. The PLAINTIFF'S scheduled relocation to the George facility was delayed inasmuch as DEFENDANTS represented that when Giga watt vacated the premises, they had removed the racks and power and data cabling, which required DEFENDANTS to repair and restore the premises.

44. In good faith reliance on the contemplated transaction, on or about October 16, 2018, PLAINTIFF funded to Minerlogic/Logix the amount of 20 BTC to a wallet designated by Sidles for application toward the 300 BTC payment.

45. On or about October 31, 2018, DEFENDANTS advised PLANTIFF that there was not adequate space availability at the George Facility as previously represented, and DEFENDANTS recommend that PLAINTIFF'S equipment be located at their Ephrata Facility.

8

46. PLAINTIFF operated at the George Facility from November 2018 to February 19, 2019, when power was terminated by DEFENDANTS.

47. The parties never executed a written lease agreement for the George Facility.

48. On or about October 15, 2018, at the request of PLAINTIFF, Minerlogic/Logix picked up computer equipment from the Moses Lake Big Box location and delivered and installed the computer equipment at the Ephrata Facility and connected the power supply.

49. A true and correct list of PLAINTIFF's equipment in DEFENDANTS' Facilities is set forth on **Exhibit F** attached hereto and incorporated herein by this reference.

50. On or about September 20, 2018, Minerlogic/Logix sold S-3 equipment to PLAINTIFF computer equipment to be installed at the Ephrata Facility.

51. PLAINTIFF operated at the Ephrata Facility from approximately September 20, 2018 to July 18, 2019.

52. During the operations at Ephrata DEFENDANTS failed to deliver power after February 19, 2019, interrupting the PLAINTIFF'S operations.

53. On or about November 30, 2018, at their new facility in Quincy, Washington, representatives of Minerlogic/Logix Sidles, Mezo and Steele met with PLAINTIFF's representative Randy Prince, and Minerlogic advised PLAINTIFF that they cannot continue to perform under their agreements PLAINTIFF is their only client necessitating increase in monthly maintenance by approximately $10,000.00 in excess of the previously agreed service amount.

54. PLAINTIFFs did not at any time agree to pay DEFENDANTS for service on a "per kwh" basis.

9

55. On or about January 10, 2019, DEFENDANTS delivered to PLAINTIFF a Frontier Electronic Invoice #18-016 in the amount of $139,503, including October 2018 – January 2019 rent for the Ephrata Bldg. 2 in the amount of $25,000 per month, charging for service on a "per kwh" basis, a true and correct copy of which is attached hereto as **Exhibit G** and incorporated herein by this reference

56. PLAINTIFF disputed the bill amount as excessive and outside their agreement, PLAINTIFF made the following payments (BTC and cash value on date paid): 01/02/2019 (11- 91/100 BTC) $46,135; 01/13/2019 (12-19/25 BTC) $44,632.

57. On or about February 5, 2019, DEFENDANTS delivered to PLAINTIFF a Frontier Electronic Invoice #18-019 in the amount of $178,061, including October 2018 – February 2019 rent for the Ephrata Bldg. 2 in the amount of $25,000 per month.

58. PLAINTIFF disputed the bill amount as excessive and outside their agreement, PLAINTIFF made a partial payment in the amount of (19-33/5-0 BTC) $78,185 on February 21, 2019.

59. On or about February 19, 2019, DEFENDANTS wrongfully terminated power supply to both the George Facility and Ephrata Facility.

60. Ultimately, the parties failed to reach agreement about the George Facility terms and DEFENDANTS removed and boxed the PLAINTIFF'S equipment at the George facility and moved the equipment to the Quincy Facility storage area on or about January 2020.

61. On or about March 1, 2019, DEFENDANTS delivered to PLAINTIFF a Frontier Electronic Invoice #18-019 in the amount of $159,397.

10

62. PLAINTIFF disputed the bill amount as excessive and outside their agreement, PLAINTIFF made a partial payment on 03/06/2019 in the amount of (7-482/727 BTC) $29,583; and 03/27/2019 in the amount of (2-636/647 BTC) $12,403.

63. The parties continued to negotiate for service agreement terms, however they never executed a contract and PLAINTIFF was forced to hire service technicians.

64. On or about April 1, 2019, after payment by PLAINTIFF in the amount of (3-119/937 BTC) $12,835, Minerlogic/Logix agreed that the balance due from PLAINTIFF was zero.

65. On or about May 6, 2019, DEFENDANTS delivered to PLAINTIFF a Frontier Electronic Invoice #18-021 in the amount of $14,750.

66. At all times Minerlogic/Logix represented that they owned the Quincy Facility.

67. On or about May 15, 2019, through independent research, PLAINTIFF discovered that neither Minerlogic nor Logix owned the Quincy Facility property, rather the Prchal & Sons was the owner and Logix held a year to year Lease.

68. In an effort to stabilize operations and gain some control over the properties by PLAINTIFF, the parties executed a written lease agreement for the Quincy Facility on June 1, 2019.

69. On or about June 11, 2019, PLAINTIFF procured a consent to Sublease of the Quincy Facility from Quincy Prchal & Sons.

70. The parties lease for the Quincy Facility was not for 5 years, as DEFENDANTS held only 1-year term, with annual renewals, PLAINTIFF was forced to accept a shorter lease term.

11

71. From March to June 2019, the parties discussed the purchase of the Ephrata Facility by an affiliate of PLAINTIFF to resume operations.

72. On or about July 18, 2019, the Ephrata Facility was sold by Minerlogic to an affiliate of PLAINTIFF, new consideration in the amount of $ 984,741 was paid and the prior 300 BTC payment was specifically excluded by DEFENDANTS from the Ephrata Facility sale.

73. DEFENDANTS defaulted in performance of Quincy Facility, PLAINTIFFS were notified that DEFENDANTS failed to make power payments and in mid-May 2020 the power at Quincy Facility was shut off.

74. As of May 30, 2020, it is anticipated that PLAINTIFFs will have vacated the Quincy Facility.

## FIRST CLAIM FOR RELIEF
### (Breach of Partnership Agreement)

75. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. That the parties agreed to enter into a five-year joint venture for the provision of 1.3 Megawatt of power to PLAINTIFF for data center operations at facilities owned/controlled by DEFENDANTS, wherein DEFENDANTS provided the service to the data equipment and PLAINTIFF operated the data equipment.

77. That DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, did agree to the Partnership Agreement.

78. DEFENDANTS required PLAINTIFF's payment of the 300 BTC payment as a condition precedent to their performance under the Partnership Agreement.

79. That PLAINTIFF did make the 300 BTC payment to DEFENDANTS.

80. That PLAINTIFF did make additional payments for power, rent and service to DEFENDANTS pursuant to the Partnership Agreement.

81. DEFENDANTS did default under the Partnership Agreement by failing to perform service and maintenance at the price agreed.

82. DEFENDANTS failed to perform under the Partnership Agreement by failing to provide uninterrupted power supply.

83. DEFENDANTS did not own or control the Facilities for the duration of the Partnership Agreement, thereby failing to provide the facilities as agreed.

84. DEFENDANTS failures to perform constitutes a material breach of the Partnership Agreement.

85. At no time during these events did PLAINTIFF ever consent to excessive service fees based upon per kwh (kilowatt hour) consumption.

86. DEFENDANTS's failure to perform, excessive service charges, excessive rental rate, failure to own or control the facilities, and additional kwh fees constitute a material breach of the Partnership Agreement and violation of Washington laws.

87. As a direct and proximate result of the breach of the Partnership Agreement by DEFENDANTS, PLAINTIFF has suffered compensatory damages in an amount exceeding Three Million Dollars ($3,000,000.00).

88. Furthermore, DEFENDANTS failure to remit utility payments for the Quincy Facility have resulted in a breach of the lease and damaged PLAINTIFF in excess of $300,000.

89. As a further direct and proximate result of the DEFENDANTS's breach of the Partnership Agreement, PLAINTIFF has been required to retain the services of an attorney

13

to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Breach of Covenant of Good Faith and Fair Dealing)

90. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 89 of this Complaint as though fully set forth herein.

91. In Washington, implied in every contract is a covenant of good faith and fair dealing. A partnership agreement is a contract.

92. DEFENDANTS breached the covenant of good faith and fair dealing by charging excessive rental and service rates and duplicate billing.

93. DEFENDANTS breached the covenant of good faith and fair dealing by withholding access to operating equipment from PLAINTIFF.

94. DEFENDANTS breached the covenant of good faith and fair dealing by disconnecting power supply in an effort to obtain excessive payments from PLAINTIFF.

95. Pursuant to the Partnership agreement, DEFENDANTS were required to supply facilities for data mining operations for PLAINTIFF for a period of 5 years with adequate power for 1.3 megawatts, at fixed service rates.

96. Implied in this agreement is the representation by DEFENDANTS that they owned or controlled the facilities for a period of 5 years.

97. Implied in this agreement is the requirement that DEFENDANTS would not interfere with the power supply or operations of PLAINTIFF'S data mines.

98. DEFENDANTS breached the implied covenant of good faith and fair dealing by failing to own or control the facilities for a period of 5 years.

14

99. DEFENDANTS further breached the implied covenant of good faith and faith and fair dealing by failing to provide uninterrupted power supply to the facilities.

100. DEFENDANTS further breached the implied covenant of good faith and faith and fair dealing by charging excessive rates for maintenance and services.

101. DEFENDANTS further breached the implied covenant of good faith and faith and fair dealing by charging excessive rates for DEFENDANTS facilities.

102. As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing by DEFENDANTS, PLAINTIFF has suffered compensatory damages in an amount exceeding Seventy-five Thousand Dollars ($75,000.00).

103. As a further direct and proximate result of the DEFENDANTS's breach of the implied covenant of good faith and fair dealing, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

### THIRD CLAIM FOR RELIEF
### (Demand for Accounting)

104. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105. In Washington, a partner has a right to demand an accounting under RCW 25.05.

106. PLAINTIFF demands an accounting of the profit and loss and assets of the Partnership.

107. As a further direct and proximate result of the DEFENDANTS' failure to provide financial reporting, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

15

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment)

108. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109. That a justifiable controversy exists between the parties regarding the terms of their joint venture operation of the Grant County Facilities.

110. That the agreement among the parties gives rise to a joint venture or partnership under RCW 25.05.

111. That PLAINTIFF alleges that its partnership rights are protected under Washington law, including RCW 25.05.

112. That PLAINTIFF requests that this Court determine the parties' relative rights under the Partnership Agreement, to wit: the operation of the facilities and service of the mining, or failure thereof, and finding that the PLAINTIFF is entitled to a refund of the 300 BTC payment.

113. As a further direct and proximate result of DEFENDANTS' attempt to circumvent the laws pertaining to partnerships and joint ventures and in direct contravention to the agreement between the parties by failing to perform the contemplated transaction, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

/ / /

/ / /

/ / /

/ / /

## FIFTH CLAIM FOR RELIEF
### (Alternative Claim for Relief Promissory Estoppel)

114. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 113 of this Complaint as though fully set forth herein.

115. In the event this Court does not find that a partnership agreement existed, in the alternate, PLAINTIFF alleges that an injustice will accrue to DEFENDANTS unless this Court applies promissory estoppel equitable relief.

116. That PLAINTIFF requests that this Court to determine that DEFENDANTS made the following promise: to provide physical warehouse facilities for PLAINTIFF'S data mining operations at fixed prices in Grant County for a five-year period.

117. That PLAINTIFF requests that this Court to determine that DEFENDANTS made the following promise: to provide uninterrupted power supply to PLAINTIFF'S data mining operations in Grant County located at the DEFENDANTS physical warehouse facilities for PLAINTIFF'S data mining operations in Grant County for a five-year period.

118. That PLAINTIFF requests that this Court to determine that DEFENDANTS made the following promise: to provide physical installation, maintenance and upgrade services to the PLAINTIFF'S data mining equipment in Grant County located at DEFENDANTS physical warehouse facilities.

119. That PLAINTIFF requests that this Court to determine that DEFENDANTS reasonably expected to cause the PLAINTIFF to change their position to rely on conducting operations in DEFENDANTS physical warehouse facilities and to rely on DEFENDANTS performance of installation, maintenance and upgrade services.

120. That PLAINTIFF requests that this Court to determine that PLAINTIFF did change their position to relocate their data computer equipment and rely on conducting

17

operations in DEFENDANTS physical warehouse facilities and to further to rely on DEFENDANTS performance of installation, maintenance and upgrade services.

121. That PLAINTIFF requests that this Court to determine that PLAINTIFF'S reliance on DEFENDANTS promises was in good faith and justifiable.

122. That PLAINTIFF requests that this Court to determine that PLAINTIFF was harmed by DEFENDANTS failure to secure physical warehouse facilities as represented and failure to provide installation, maintenance and upgrade services at the prices agreed upon.

123. That PLAINTIFF requests that this Court to determine that allowing DEFENDANTS to retain the 300 BTC payment when they have failed to provide warehousing, power and service for PLAINTIFF'S data mining operations, would result in injustice, unless the 300 BTC payment is refunded to PLAINTIFF.

124. As a further direct and proximate result of DEFENDANTS' failure to apply the 300 BTC payment to performance of the contemplated transactions with PLAINTIFF, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Fraud in the Inducement and Negligent Misrepresentation)

125. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 124 of this Complaint as though fully set forth herein.

126. DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, made numerous material, false and misleading and oral representations to PLAINTIFF that over a five year period, it would provide physical warehouse facilities at fixed prices

18

in Grant County, adequate transformers for uninterrupted power supply and physical installation, maintenance and upgrade services at specified prices to PLAINTIFF'S data mining equipment.

127. That DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, represented that the 300 BTC payment was reimbursable.

128. That DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, failed to disclose that they did not own or control the George Facility or the Quincy Facility for the five-year period as represented.

129. That DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, failed to disclose that they did not have adequate space at the George Facility as represented inasmuch as a portion of the space it was being used for the operations of DEFENDANTS or a third party.

130. That when DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, made such representations, they, and each of them, knew or should have known that such representations would induce PLAINTIFF's reliance thereon.

131. That such representations were made by DEFENDANTS, by and through its owner/representatives Sidles, Steele and Mizo, without reasonable care as to the truth or falsity of the representation, and with the intent to induce the acting or refraining from acting by PLAINTIFF in reliance upon such representations.

132. PLAINTIFF justifiably relied upon DEFENDANTS' negligent misrepresentations and advanced 300 BTC payment, relocated their data mining equipment to DEFENDANTS' facilities and deferred and delayed service contracts with other licensed contractors.

19

133. That DEFENDANTS', by and through their representatives, failure to disclose that they did not own or control the facilities for the represented 5 year period resulted in adverse action by PLAINTIFF in relocating their equipment to DEFENDANTS' facilities without the assurance of control over the physical facilities, material contributing to PLAINTIFF'S operation failure at DEFENDANTS' facilities.

134. That DEFENDANTS, by and through its representatives, failure to provide service to PLAINTIFF'S operations in the form of computer and transmission line maintenance resulted in adverse costs and action by PLAINTIFF to hire other licensed contractors.

135. That DEFENDANTS failure to reimburse the 300 BTC or any portion thereof damaged PLAINTIFF in the amount of Three Million Dollars ($3,000,000.00).

136. As a direct and proximate result of the negligent misrepresentations by DEFENDANTS, PLAINTIFF has suffered compensatory damages in an amount exceeding Three Million Dollars ($3,000,000.00).

137. As a further direct and proximate result of the DEFENDANTS' negligent misrepresentation, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

/ / /

/ / /

/ / /

/ / /

/ / /

20

## SEVENTH CLAIM FOR RELIEF
### (Alternative Claim for Relief Unjust Enrichment)

138. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 137 of this Complaint as though fully set forth herein.

139. DEFENDANTS represented that their locations were equipped with transformers capable of providing excessive power for data mining operations.

140. DEFENDANTS represented that they provided licensed electrical services and data and transmission equipment maintenance in Washington

141. DEFENDANTS represented that they would provide 1.3 Megawatt of power to PLAINTIFF for data center operations at facilities owned/controlled by DEFENDANTS for a period of five years upon payment by PLAINTIFF of 300 BTC.

142. PLAINTIFF paid 300 BTC to DEFENDANTS in good faith.

143. DEFENDANTS failed to provide 1.3 Megawatt of power to PLAINTIFF for data center operations at facilities owned/controlled by DEFENDANTS for a period of five years

144. DEFENDANTS have utilized the 300 BTC payment for their own benefit.

145. DEFENDANTS have been unjustly enriched by, among other things, the benefit they received from the 300 BTC payment without providing the promised 1.3 Megawatt of power to PLAINTIFF for data center operations at facilities owned/controlled by DEFENDANTS for a period of five years.

146. Principles of equity and fairness dictate that the DEFENDANTS and each of them, jointly and severally, pay to PLAINTIFF the full amount of their unjust enrichment.

147. That the DEFENDANTS, and each of them, jointly and severally, and/or their representatives and/or agents, have been unjustly enriched by the use of the 300 BTC

payment advanced by PLAINTIFF, thereby damaging PLAINTIFF in an amount of 300 BTC payment or case equivalent as of the dates advanced in the amount of Three Million Dollars ($3,000,000.00).

148. As a further direct and proximate result of the DEFENDANTS' unjust enrichment, PLAINTIFF has been required to retain the services of an attorney to prosecute this action and has been damaged thereby; as such, PLAINTIFF is entitled to an award of reasonable attorney's fees and costs.

## EIGHTH CLAIM FOR RELIEF
### (Special Damages- Attorney's Fees)

149. PLAINTIFF repeats and realleges the allegations of Paragraphs 1 through 148 of this Complaint as though fully set forth herein.

150. That the PLAINTIFFs have incurred attorney fees as foreseeable damages arising from the tortuous conduct and acts of DEFENDANTS, such that PLAINTIFF are entitled to special damages in the form of attorney's fees and costs to bring this action.

**WHEREFORE,** PLAINTIFF prays for judgment against DEFENDANTS as pled herein and for damages against DEFENDANTS follows:

1. That PLAINTIFF be awarded compensatory, actual, consequential, and incidental damages in an amount in excess of Three Million Dollars ($3,000,000.00);

2. That PLAINTIFF be awarded punitive damages in an amount sufficient to punish the DEFENDANTS for their conduct;

3. For costs and attorney fees; and

/ / /

/ / /

22

4.  For such further and other relief as the Court deems just and proper.

Dated this 28th day of May, 2020.

By: _Shauna Brennan_

Shauna Brennan, Esq.
Brennan Legal Counsel Group, PLLC
1010 S. I Street
Tacoma, Washington 98405
Telephone: 702.306.8104
Facsimile: 702.834.5340

**Attachments**:

| | |
|---|---|
| **Exhibit A** | Email from Steve Stelle dated May 31, 2015 |
| **Exhibit B** | David Martin Notes from June 1, 2018 call |
| **Exhibit C** | Total Power Required for all Equipment and Facility Spreadsheet |
| **Exhibit D** | September 4, 2018 Accounting for Quincy/Brown by Minerlogic |
| **Exhibit E** | September 20, 2018 Minerlogic/Logix Mining Facilities |
| **Exhibit F** | Galaxy Count Spreadsheet as of 1-14-2019 |
| **Exhibit G** | Frontier Invoice dated January 10, 2019 |

**VERIFICATION**

STATE OF NEVADA    )
                      )ss
COUNTY OF CLARK   )

I, RANDY PRINCE, am the authorized agent for DIVERSIFIED TECHNOLOGY HOLDINGS INC., the named PLAINTIFF in the above-entitled action. I have read the foregoing VERIFIED COMPLAINT and hereby verify, under penalty of perjury, that all information stated therein is true and correct to the best of my knowledge on this ___ day of May, 2020.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

///

///

///

///

///

///

///

24

1    I agree to provide the Clerk's Office with any changes to my address where case-

2    related papers may be served. I understand that my failure to keep a current address on

3    file with the Clerk's Office may result in the dismissal of my case.

4

5                                                    RANDY E. PRINCE

6

7    SUBSCRIBED and SWORN to before
     me this ___ day of May, 2020.
8

9

10   Notary Public, in and for said
     County and State.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   25

# EXHIBIT A


May 31, 2018, 5:07 PM

Ok deal as detailed below.
Lease 5yr
George 4000.00 mo. Paid to minerlogic
Brown 2000.00 mo. Paid to minerlogic
Power you do your own account with grant co. PUD. For both properties
Maintenance fee mo. .75 cents per watt. Total 9375.00






Steve

Maintenance fee
mo. .75 cents per
watt. Total  9375.00
per month.
Price is 300 BTC
140 BTC when
agreement is accept-
ed by galaxy
160 BTC due 120
calendar days.
Insurance minerlogic
listed as additional
insured

Thanks Steve I will
take this to David
tonight

  iMessage 

# EXHIBIT B

MinerLogic Mine Lease

George Facility 1 megawatt $4,000/month lease.
Brown Facility 300 kilowatt $2,000/month lease.
Monthly maintenance at capacity $3,375/month.
Total $9,375/month

Galaxy Mining will pay these fees directly to MinerLogic.

Galaxy Mining will get an insurance policy on the building and also name MinerLogic additional insured.

Opportunity cost 300 BTC.
160 BTC paid when contract is completed and signed by both parties.
140 BTC due 120 calendar days from contract signed
All BTC paid shall have a spot price accepted by both parties of $10,000 each.

Galaxy Mining will place the electrical bills with the Grant County PUD and will assume responsibility for all electrical power costs during the term of the 5-year lease.

Galaxy Mining understands there will be no increase in the initial pricing from the PUD when it takes over due to a payor change. The agreed to per kilowatt rate will remain as stated during the negotiations.

Deployment cost will be between $6,000 and $7,000 to a turnkey handover on both locations.

There will be a penalty clause if the agreed to move in date is missed not to exceed 100% of the BTC paid at its current price but shall not be less then $10,000 spot price agreed to.

By mutual agreement with proper notice, there will be an extension clause to be agreed to by both parties at the end of the 5-year lease.

Galaxy Mining has already agreed to work with Kyle on building GPU rigs in an ongoing forward supplier.

MinerLogic will make a decision on the buyback of the Avalon Miners which they sold to Galaxy Mining.

# EXHIBIT C

Sheet1

| Mine Location | Description | Power Available in KVA |
|---|---|---|
| Quincy | Green Building / Prchie's | 300 |
| Ephrata Building 1 | Ephrata 1 | 300 |
| Ephrata Building 2 | Ephrata 2 | 750 |
| George Building 1 | George 1 | 1000 |
| George Building 2 | George 2 | 250 |
| | Total | 2600 |

| Miner Type | Count | Power Consumption |
|---|---|---|
| S9 | 100 | 145000 |
| | 400 | 580000 |
| | 469 | 680050 |
| Total | 969 | 1405050 |
| L3 | 100 | 88000 |
| | 200 | 176000 |
| Total | 300 | 264000 |
| Dash | 100 | 125000 |
| Total | 100 | 125000 |
| Panda | 139 | 173750 |
| Total | 139 | 173750 |
| Alpha | 10 | 12500 |
| Total | 10 | 12500 |
| 6 Card GPU | 400 | 400000 |
| Total | 400 | 400000 |
| TOTAL POWER REQUIRED FOR ALL EQUIPMENT | | 2380300 |

1

# EXHIBIT D

Quincy Mine

| Mine Quincy | | | | |
|---|---|---|---|---|
| 300 kva | $1 per watt | $300,000.00 | | |
| 180 Avalons, PSUs, Controllers | $1500 per set | $270,000.00 | | |
| Total | | $570,000.00 | | |
| | | | | |
| Galaxy Paid | | $250,000.00 | | |
| Remaining Balance | | $320,000.00 | | |
| | | | | |
| Minerlogic repurchase Avalons | $1200 per set | 216000 | | |
| | | | | |
| Total Remaining Balance | | $104,000.00 | | |

Quincy Lease, Power, Maint

| Month | Electricity | Rent | Maintenance | |
|-------|-------------|------|-------------|---|
| May | $6,159.00 | $2,000.00 | $1,000.00 | |
| June | $6,159.00 | $2,000.00 | $1,000.00 | |
| July | $5,929.00 | $2,000.00 | $1,000.00 | |
| August | $5,929.00 | $2,000.00 | $1,000.00 | |
| | | | | |
| Totals | $24,176.00 | $8,000.00 | $4,000.00 | |
| | | | | |
| | | | | |
| | | Total Power, Lease & Maintenance | $36,176.00 | |

## GPU Build

| Rigs Built | Price | Total Cost | | |
|---|---|---|---|---|
| 50 | $750.00 | $37,500.00 | | |
| | | | | |
| | | | | |
| Remaining Rigs To Build | | | | |
| 80 | $750.00 | $60,000.00 | | |
| | | | | |
| | | | | |
| Total Due | | $97,500.00 | | |
| | | | | |

-

## 1.3 MW Expansion

| Power Availability | Cost | | | |
|---|---|---|---|---|
| 1.3MW | 300btc | | | |
| | | | | |
| Galaxy Paid | 130btc | | | |
| | | | | |
| Remaining Balance | 170btc | | | |
| | | | | |
| | | | | |
| | | | | |

## Summary

| | | | |
|---|---|---|---|
| Quincy Mine | $104,000.00 | | |
| Quincy Lease, Power, Maintenance | $36,176.00 | | |
| GPU Build | $97,500.00 | | |
| 1.3 MW Expansion | 170 BTC | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total Dollars Due | $237,676.00 | | |
| Total BTC Due | 170 BTC | | |

# EXHIBIT E

| Rigs/Parts | Totals | | | | | | |
|---|---|---|---|---|---|---|---|
| S9 | 24 | | | | | | |
| Gpu 390 | 196 | | | | | | |
| Gpu 480 | 223 | | | | | | |
| Moses Lake | | Rock Island | | Pangborn | | 10/DD/YY | |
| GPU 380 | 333 | L3 | 483 | S9 | 478 | S9 | 284 |
| GPU R938 | 37 | D3 | 293 | L3 | 200 | Bitmain PSU | 205 |
| GPU 939 | 41 | S9 | 172 | D3 | 100 | | |
| GPU R9 39G1 | 2 | Panda | 20 | Alphas | 10 | | |
| GPU 470 | 2 | Bitmain PSU | 170 | | | | |
| GPU 290 | 103 | Panda PSU | 20 | | | | |
| Pandas | 108 | | | | | | |
| Alphas | 10 | Total | 1158 | Total | 788 | Total | 489 |
| Motherboards | 515 | | | | | | |
| PSU 500 | 22 | | | | | | |
| PSU 550 | 8 | | | | | | |
| PSU 600 | 159 | | | | | | |
| PSU 650 | 38 | | | | | | |
| PSU 750 | 18 | | | | | | |
| PSU 850 | 229 | | | | | | |
| PSU 1200 | 44 | | | | | | |
| PSU 1250 | 121 | | | | | | |
| PSU 1300 | 88 | | | | | | |
| PSU 1500 | 30 | | | | | | |
| PSU 1600 | 2 | | | | | | |
| PSU Panda | 70 | | | | | | |
| PSU Alpha | 14 | | | | | | |
| PSU 1600 Bitmain | 53+8 | | | | | | |
| | | | | | | | |
| | GPU Total | PSU Total | Rigs Total | | | | |
| | 937 | 843 | 2577 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 25 | 290 | | | | |
| 20 | 290 | | | | |
| 24 | 290 | | | | |
| 21 | 380 | | | | |
| 27 | 380 | | | | |
| 24 | 380 | | | | |
| 22 | 380 | | 290 | 69 | 3 |
| 22 | 380 | | 380 | 260 | 12 |
| 17 | 380 | | 390 | 88 | 7 |
| 27 | 380 | | 480 | 38 | 2 |
| 20 | 380 | | | | |
| 18 | 380 | | | | |
| 17 | 380 | | | | |
| 23 | 380 | | | | |
| 22 | 380 | | | | |
| 10 | 390 | | | | |
| 10 | 390 | | | | |
| 10 | 390 | | | | |
| 12 | 390 | | | | |
| 15 | 390 | | | | |
| 16 | 390 | | | | |
| 15 | 390 | | | | |
| 18 | 480 | | | | |
| 20 | 480 | | | | |
| 455 | | | | | |

# EXHIBIT F

**Former GW Facilities:**

**Ephrata Core:**
1MW facility Ephrata
Two Buildings:
300KW Ephrata 1
750KW Ephrata 2

Internet: 100Mb/sec Fiber Unlimited Upload/Download

**Equipment in Ephrata:**
L3 – 86 staged, 14 running
S3 – 4 test rigs, 20 staged

Kyle: Just write it in any place that you think is good

**Quincy:**
300KW

**Internet:**
Currently: Aspeedynet – Microwave (Long Range Wifi) – 1-3Mbits/sec
Future: N/A

**Equipment in Quincy:**
20 S9s
40 Alpha 200s
140 Avalons (Switching out for S9s)

**George Core:**
1MW George

**Internet:**
Currently: Aspeedynet – Microwave (Long Range Wifi) – 1-3Mbits/sec
Note: All Internet is coming through Grant County
Future: 100Mb/sec Fiber Unlimited Upload/Download – Coming to George in Oct-Dec 2018

**Alpha 200:**
Normally has ? (Ubuntu 16.4?)
Putting ethOS

# EXHIBIT G

Frontier Electric, Inc.

P O BOX 1263
Quincy, WA 98848

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/10/2019 | 18-016 |

| Bill To |
|---------|
| Galaxy |

| Ship To |
|---------|
| |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | Due on receipt | | 1/10/2019 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | Leases | *SEE ATTACHED BREAKDOWN | 129,290.00 | 129,290.00T |
| | | Sales Tax | 7.90% | 10,213.91 |

| | Total | $139,503.91 |
|--|-------|-------------|

To: Galaxy
Attn: Randy Prince & Dave Martin

Date: 1-10-19

Concerning: The forward movement of Galaxy's and Logix's mining relationship

It is unfortunate that finances have brought us to this point. It is not our intentions, just as it is not yours, to have come to this decision that is required from both parties. From our point of view we have been giving many financial favors in terms of what we provide to Galaxy, doing this on the premise of future agreements and purchases. If we had known that this was a possible outcome, as you had started to plan this possibility as of two months ago, but indicating to us that we would be able to work it out, we could have put ourselves in a better position to handle this outcome and not had to go in a different direction. All that being said we must tighten our ship and concern ourselves with our future which includes the following.

* Attached is the lease agreement for George we need it signed so that can be concluded this business.

* As of today George is up and running as well as the additional 300 KVA. We are electing to not to build-out the additional 300 KVA facility at another location, but will be giving you 300 KVA out of the Ephrata site. Therefore; the 1.3 additional megawatts are being provided as per agreement. The break out for monthly billing is as follows and is owed now:

George Jan. lease:                           $4,000.00
Quincy Jan. lease:                         $2,000.00
Ephrata Jan. lease:                       $2,500.00 as per agreed amount
**TOTAL MONTHLY LEASE DUE NOW:**     **$8,500.00**

* Power bills for Quincy and George need to be put into your company's name by 1/14/2019. Ephrata's electric bill will be billed on your monthly bill as it will need to be broken out from building's #2 electrical consumption.

* From January 1, 2019 the service agreement will be as follows; unfortunately it is non negotiable, as this is the cost of the team that provides what we do and cost of doing it. We absorbed the costs until now based on the future of our relationship, which is no longer a part of the considerations.

George maintenance:                      $17,500.00
Quincy maintenance:                    $5,250.00
Ephrata maintenance:                   $5,250.00
**TOTAL MONTHLY MAINTENANCE DUE NOW:**     **$28,000.00**

This does not include any staging, moving, deployment, etc. it is only for operation of the mines all other thing are on a cost to do basis.

If this maintenance agreement is not acceptable, we understand and are willing to provide access to whoever you hire to do your maintenance and additional requirements.

* This brings us to the use of Ephrata for October, November, December, and til January 14, 2019 if you were to have leased this property the monthly bill would have been $25,000.00 per month all paid upfront, since Galaxy has opted not to lease or purchase there is the bill from us for the use of the premises.

October:
November:                                                          $25,000.00
December:                                                          $25,000.00
Til January 14, 2019:                                              $25,000.00
TOTAL OWED ON OCCUPIED SPACE DUE NOW:                              $11,290.00
                                                                   $86,290.00

* Extraction and transport of Galaxy's equipment from Gigawatt originally priced at $6,500.00 then agreed to help with no monetary consideration again agreed based on perceived future financial partnership. Our cost $6,500.00.
YOUR COST DUE NOW: $6,500.00

SUB-TOTAL:                      $129,290.00
TAX @.079:                      $10,213.91
TOTAL OWED AS OF NOW:           $139,503.91

TAX CAN BE REMOVED IF WE GET A RE-SELLERS PERMIT.

Monthly billing will be payed in advance, not after the month. The electrical payment for the used electrical will be billed as soon as we are billed from the electrical company.

THANK-YOU!
STEVE STEELE, PATRICK MEZO, AND KYLE SIDLES